By the Court—Robertson, J.
Whatever was the meaning of the phrase in the policy in this case, “ said buildings are warmed by steam. Water on each floor with hose, and a watchman is to be kept on the premises at night, as described in report Fo. —,” it is a warranty of something already existing or an undertaking that something shall be done. And therefore its influence on the *433 risk is wholly immaterial. (Angel on Life and Fire Ins., Co., §§ 144, 146, and cases cited.) As such warranties are wholly independent of any inquiry into their materiality, they must be literally construed, and nothing more than a literal fulfillment can be required, (Hovey v. Am. Mut. Ins. Co., 2 Duer, 570, and cases cited,) and no intendment can be made from them against the assured. (1 Arn. on Ins., § 215, p. 585.)
The first part of such clause is a warranty of an existing fact, (Wall v. East River Mut. Ins. Co., 7 N. Y. R., 370,) that the building insured was “ warmed by steam.” It would be doubtful whether the part relating to “ water” and “hose,” was a warranty of an existing fact or an undertaking for the future, unless the words, “is to be kept,” applies to them as well as to “the watchman.” Coming after the warranty as to the mode of warming, it may fairly be implied to relate to the future. “ Water on each floor,” .is ambiguous. Literally interpreted it would imply that the floors were to be kept wet. Accompanied by a reference to the mode of warming, to hose, and keeping a watchman at night on the premises, in a policy of insurance against fire, it may fairly be construed to refer to some means of protection against such risk. It was testified in this case that there were but two floors in the building insured, known as such in factory language, the first and second; neither the basement nor attic being considered such. The building itself was described in the policy as a two story frame one, and permission was given to erect a building one and a half stories high, with a basement; showing that the parties did not consider the basement or attic any of the stories of the building. These considerations are admissible in interpreting the word “ floor.” (Daniels v. Hudson River Ins. Co., 12 Cush., 416; Dana v. Fiedler, 12 N. Y. R., 40.) Accompanying circumstances are always admissible to construe a contract, (Moore v. Meacham, 10 N. Y. R., 207 ; Blossom v. Griffin, 13 Id., 569,) particularly a commercial one. (Agawam Bank v. Strever, 18 N. Y. R., 502.) Even declarations *434 and acts of the parties as to what they understood by an indefinite phrase, at the time of making the contract, have been admitted. (Almgren v. Dutilh, 5 N. Y. R., 28.) Houses have been shown thus to come within the term “ brick buildings,” although they had wooden partitions merely filled in with brick. (Mead v. N. W. Ins. Co., 7 N. Y. R., 530.) The capture of sea elephants has been established to be part of a “whaling voyage,” (Child v. Sun Mut. Ins. Co., 3 Sandf. S. C., 26,) and glass in tight casks has been shown- not to be intended by glassware in casks. (Bend v. Georgia Ins. Co., 1 N. Y. Leg. Obs., 12.) So that there was fair ground for interpreting the policy in this case as not requiring water or -hose to be kept on any story except the two above the basement, if it was to be kept continually there at all. ' If there was any conflict of evidence as to the meaning’of the word floor, in “ factory parlance,” it should have gone to the Jury. (Daniels v. Hudson River Ins. Co., ubi sup.)
“Water on each floor, with hose,” is not a very clear description of what the plaintiffs meant to undertake; The parties differ materially in their construction of those words. At the time of executing the policy there were no reservoirs of or for water on any floor except the attic. There would be water in every floor, except the basement, or not, according as the perpendicular iron pipe was filled or not; and “hose” was attached to such pipe on every such floor. It is to be remarked that the policy does not call for hose on every floor as well as water, and there was evidence that the hose attached to the apparatus in the building could be used on every floor to extinguish a fire in it. There is nothing said in the policy of the attachment of the hose to anything, and, therefore, “with hose” can only be construed to mean having hose in the building or on the premises, in a condition to be used on every floor in connection with the means of supplying water for that floor.
There is a peculiar- fitness in applying the term “at night,” to the hose as. well as the watchman. During the *435 day, there were probably enough persons present to attach the hose and apply the steam engine and water wheel to forcing water through the building to extinguish a fire. At night it was necessary to have the tank full, the hose attached to the pipe, and a person specially charged to guard against fires and use the water and hose. The word described seems more appropriate to the hose than the watchman.
There can be no doubt, I think, if the report referred to ■had been produced, it would have cleared up considerable confusion in the terms of such warranty. As the defendants claimed the benefit of it, they were bound to show clearly what it meant. In the absence of such report, such warranty is only susceptible of an interpretation to be derived from its apparent object, its terms and the connection in which it is found. And as the object of a policy is indemnity, it is the business of the insurers to see that if they hamper the insured with the performance of conditions, these conditions are expressed in their policy in the clearest terms.
No evidence was offered of the meaning, in the language of factories or insurers and insured, of “water on each floor, with hose.” Possibly they may have some technical meaning. I think, however, there was error in not submitting to the Jury the meaning of the word “floor” in the contract, which, if they had found in favor of the plaintiffs, would have rendered the contract to mean facilities for throwing water upon each floor, by means of hose to be kept on the premises.
The dismissal of the complaint was therefore erroneous, and the judgment upon it should therefore be reversed, and a new trial had, with costs to abide the event.